DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from the Lucas County Court of Common Pleas wherein appellant, Philip Gott, was convicted of aggravated murder with a firearm specification. The facts giving rise to this appeal are as follows.
On the evening of April 20, 1994, Chris Vincent was sitting in the passenger seat of a car at the corner of Monroe and Bancroft Streets when a man walked up to the passenger's side window and shot Vincent multiple times. A passenger in the back seat, Bernadette Cain, was shot in the leg. Mary Tyree, who was sitting in the driver's seat of the car, immediately drove to the hospital where Vincent was pronounced dead.
Police later learned that on the night he was shot, Vincent had arranged to purchase marijuana from Kelvin Gist. Gist and his friends, Willie Carter III, Diarre Hamilton and appellant, decided to rob Vincent instead of selling him marijuana. Appellant arrived at the designated corner, pointed a gun at Vincent and demanded his money. When Vincent refused to give appellant his money, appellant shot him.
Appellant was indicted on one count of aggravated murder with a firearm specification. A jury found him guilty as charged and on May 10, 1999, he was sentenced to a term of incarceration of twenty years to life. He received an additional three year term for the firearm specification. Appellant now appeals setting forth the following assignments of error:
 "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUESTED CONTINUANCE FOR COUNSEL TO COMPLETE HIS INVESTIGATION.
 "II. THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "III. THE TRIAL COURT ERRED WHEN IT GAVE THE JURY INSTRUCTIONS.
 "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED HEARSAY STATEMENTS OF THE CO-CONSPIRATOR WILLIE CARTER III INTO EVIDENCE."
In his first assignment of error, appellant contends the court erred in denying his motion for a continuance.
The grant or denial of a continuance is a matter that is entrusted to the sound discretion of the trial court. State v.Lorraine (1993), 66 Ohio St.3d 414, 423; State v. Unger (1981),67 Ohio St.2d 65, syllabus.
 "In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Unger 68-69, citations omitted.
Appellant's counsel was appointed to represent him approximately one month before the trial started. He was appointed after appellant's initial counsel withdrew due to a conflict of interest. On March 24, 1999, counsel filed a "motion for authorization to employ reasonably necessary services." Specifically, appellant's counsel sought funds to hire an investigator to assist him in locating and/or interviewing witnesses in preparation for trial. The court denied the motion on April 9, 1999. On April 21, 1999, appellant's counsel filed a motion to vacate the April 26, 1999 trial date. Counsel argued he needed more time to locate and/or interview witnesses in preparation for trial. The court denied his motion on April 22, 1999.
Appellant was indicted in 1998 for a crime that took place in 1994. The record shows that appellant's case had been continued five times at appellant's request before trial counsel filed the April 21, 1999 motion to vacate. In addition, the state had already arranged, at considerable expense, for the transportation of witnesses from various penitentiaries. Given these circumstances, we cannot say the court abused its discretion in denying counsel's motion for a continuance. Appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant contends his conviction is against the manifest weight of the evidence.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 21, [457 U.S. 31] 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only if we conclude that the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial.Id. We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The rationale behind this precedent is that the trier of fact occupies the optimal viewpoint for observing and assessing the demeanor of the witnesses as they testify. Myers v. Garson (1993), 66 Ohio St.3d 610, 615; SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Appellant's sole argument is that there was no credible evidence to support appellant's conviction. Delano Wellington and Diarre Hamilton testified for the state. Both men testified that they, along with Kelvin Gist, Willie Carter and appellant, helped to plan and execute the robbery of Chris Vincent on April 20, 1994. Both men testified that in the course of the robbery, appellant shot Chris Vincent. Kelvin Gist testified that on the evening of April 20, 1994, he suggested to Wellington, Hamilton, Carter and appellant that Chris Vincent would make a good target for robbery. Gist did not accompany the other four men when they left to rob Vincent. After Vincent was shot, all four men went to Gist's house. Gist testified that Carter told him that appellant had shot Vincent. Gist also testified that appellant told him that he shot Chris Vincent because the driver of the car Vincent was riding in tried to run him over.
Wellington, Hamilton and Gist all testified that they had reached a deal with the state wherein they agreed to testify truthfully in exchange for not being prosecuted in relation to Vincent's murder. Hamilton testified that he is currently serving time in prison for an unrelated charge of conspiracy to commit aggravated murder. Gist testified that he was currently serving time in prison for federal drug charges. Both Hamilton and Gist were cross-examined.
Neither passenger in the car with Vincent, nor anyone at the intersection that evening, was able to provide a helpful description of a suspect. Thus, appellant's conviction in this case rests with the credibility of three men of questionable character who were involved in the crime for which appellant now appeals. Nevertheless, the three men were consistent in their testimony. The jury received an instruction on weighing the credibility of accomplice testimony and juries are presumed to have followed the judge's instructions. State v. Henderson
(1988), 39 Ohio St.3d 24. Based on our review of the record, we cannot say that the jury, who observed the witnesses' demeanor, gestures and voice inflections, lost its way and committed a miscarriage of justice. Accordingly, appellant's conviction was not against the manifest weight of the evidence and appellant's second assignment of error is found not well-taken.
In his third assignment of error, appellant contends the court erred in instructing the jury on accomplice testimony.
R.C. 2923.03(D) provides:
 "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 `The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
The trial judge in this case instructed the jury as follows:
 "Now, you heard from persons who may have been accomplices; that is, those who purposely assisted in the commission of a crime. Whether a certain witness was an accomplice and the weight to give to that person's testimony are matters for to you determine. Testimony of a person who you find to be present should be viewed with grave suspicion and weighed with great caution because an accomplice may have special motives for testifying."
Appellant contends that the court erred in not giving the jury the accomplice instruction found in 4 Ohio Jury Instructions (2000) 44, Section 405.41.
"ALTERNATIVE NO. 1
 (A) You have heard testimony from ______, another person who (pleaded guilty to) (is accused of) the same crime charged in this case and is said to be an accomplice. An accomplice is one who (purposely) (knowingly)(assists)(joins) another in the commission of a crime. Whether ________ was an accomplice and the weight to give his testimony are matters for you to determine.
 "(B) Testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution.
"ALTERNATIVE NO. 2
 "(A) You have heard testimony from _______, another person who (pleaded guilty to) (is accused of) the same crime charged in this case and is said to be an accomplice. An accomplice is one who (purposely) (knowingly)(assists)(joins) another in the commission of a crime. Whether _____ was an accomplice and the weight to give his testimony are matters for you to determine from all the facts and circumstances in evidence.
 "(B) The testimony of an accomplice [that is supported by other evidence] does not become inadmissible because of his complicity, moral turpitude, or self-interest. but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 "It is for you, as jurors, in the light of all the facts presented to you and from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
 "(C) An accomplice may have special motives in testifying, and you should carefully examine and accomplice's testimony and use it with great caution and view it with grave suspicion."
Appellant's trial attorney made no objection to the jury instructions at trial. Ordinarily, a criminal defendant's failure to object to a jury instruction constitutes a waiver of any claim of error on appeal based on that instruction. State v. Long
(1978), 53 Ohio St.2d 91, 96-97. Under these circumstances, an appellate court will notice only plain error under Crim.R. 52(B). Furthermore, plain error exists in regard to an improper jury instruction only if the outcome of the trial clearly would have been different in the absence of error. Id.
The trial court must instruct the jury on all of the essential elements of the offense charged. State v. Endicott
(1994), 99 Ohio App.3d 688, 693. Jury instructions should be tailored to the facts of each case and the judge has the authority to select and modify the instructions to fit those particular facts. Id. Thus, a reviewing court will not overturn a trial court's ruling but for an abuse of discretion. Id.
As for the Ohio Jury Instructions ("OJI"), the trial court is not required to read from the book verbatim. Rather, the instructions are "recommended instructions * * * crafted by eminent jurists to assist trial judges with correctly and efficiently charging the jury as to the law applicable to a particular case."State v. Martens (1993), 90 Ohio App.3d 338. See, also, State v.Burchfield (1993), 66 Ohio St.3d 261, 263 stating: "While the OJI is widely used in this state, its language should not be blindly applied in all cases."
The judge's instruction in this case regarding accomplice testimony accurately informed the jury of the law and reflected the suggested instructions offered by the Revised Code and the OJI. Accordingly, we find no plain error. Appellant's third assignment of error is found not well-taken.
In his fourth assignment of error, appellant contends that the court erred in admitting the hearsay statements of Willie Carter.
The Supreme Court of Ohio has held that an error such as allowing hearsay statements to be heard by a jury may be harmless in light of the entire evidence adduced against a defendant.State v. Carter (1995), 72 Ohio St.3d 545, 550. An "error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction." State v. Rahman (1986), 23 Ohio St.3d 146,151, quoting State v. Bayless (1976), 48 Ohio St.2d 73, 106, vacated in part on other grounds (1978), 438 U.S. 911,98 S.Ct. 3135, 57 L.Ed.2d 1155.
The statements at issue in this assignment of error reveal Willie Carter's role in planning the robbery of Chris Vincent. Willie Carter did not testify in this trial. His statements were recounted by the others involved in the crime. Assuming these statements amounted to inadmissible hearsay, we find their admission harmless given the fact that two witnesses testified that appellant shot Chris Vincent while one witness testified that appellant confessed to shooting Chris Vincent. Accordingly, appellant's fourth assignment of error is found not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
Peter M. Handwork, J., Richard W. Knepper, P.J., Judges concur.
 ___________________________ Melvin L. Resnick, J.